UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
ROBERT C. LAURISTON,                    )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        CIVIL ACTION NO.
                                        )        08-CV-11956-PBS
HALLSMITH-SYSCO FOOD SERVICES,          )
INC.,                                   )
                                        )
            Defendant.                  )
_____)


**MEMORANDUM AND ORDER**

June 15, 2010

Saris, U.S.D.J.

## I.  INTRODUCTION

Plaintiff Robert C. Lauriston brings this action against his former employer, Hallsmith-Sysco Food Services, Inc., now known as Sysco Boston, LLC ("Sysco"), alleging unlawful discrimination on the basis of his race, color, and national origin under Title VII of the Civil Rights Act of 1964 and Chapter 151B of the Massachusetts General Laws.  Specifically, plaintiff alleges that Sysco unlawfully (1) denied him a promotion; (2) demoted him; and (3) subsequently terminated his employment.  Defendant has moved for summary judgment on all three claims.  After hearing and review of the record, the Court **ALLOWS** the Motion for Summary Judgment.

## II.   BACKGROUND

With all reasonable inferences drawn in the plaintiff's favor, the record contains the following facts, which are undisputed unless otherwise noted.

### A.   <u>Plaintiff's Initial Employment with Sysco</u>

Sysco works in the food service industry, providing bulk goods to food and beverage businesses, such as restaurants, and to institutional clients, including schools and hospitals. (Gannon Aff. ¶ 5.)  Defendant employs approximately 825 people, which, at the time periods involved in this case, included between 160 and 200 drivers.  (<u>Id.</u> ¶ 7.)

In September 1999, Sysco hired plaintiff, an African-American man of Haitian nationality, as a warehouse worker.  (<u>Id.</u> ¶ 8; Lauriston Dep. 6:10-24; Def.'s Exs. 9, 46.)  At his request, Sysco placed plaintiff in its driver trainee program in early 2000.  (Gannon Aff. ¶ 9; Def.'s Exs. 10, 13.)  He received another raise upon entering the program, in addition to one a few months after beginning his employment.  (Gannon Aff. ¶ 12; Def.'s Ex. 12.)  Plaintiff had difficulty in the training program initially, including an accident deemed a Major Chargeable Offense for which he received a three day suspension.  (Gannon Aff. ¶ 10; Lauriston Dep. 27:1-29:18.)  He received written warnings for the accident and for falling behind the other trainees.  (Lauriston Dep. 33:12-34:22; Def.'s Exs. 14, 15.)

Nevertheless, plaintiff received additional training, improved his performance, and completed the program successfully, becoming a driver in May 2000. (Gannon Aff. ¶ 11; Lauriston Dep. 34:23-35:12.)  Plaintiff received another raise upon completing the program. (Gannon Aff. ¶ 12; Def.'s Ex. 12.)  He performed his work as a driver ably for five years and acknowledges that Sysco and his supervisor, George Melendy, treated him well during that time. (Gannon Aff. ¶ 13; Melendy Dep. 36:13-15; Lauriston Dep. 36:4-8, 80:18-23.)

Sysco's Transportation Manager, Ronald Gordon, manages the performance of six lead drivers and supervisors, who each oversee twenty-five to thirty drivers. (Gordon Aff. ¶ 3.)  Their responsibilities include driver training, communicating company policies, and monitoring their drivers' conduct and productivity. (Gannon Aff. ¶ 15; Def.'s Ex. 16.)  Their own driving duties are curtailed or eliminated.  The lead driver position is effectively a step toward becoming a supervisor, designed to determine whether an employee can perform as an effective manager. (Jordan Aff. ¶ 5; Melendy Dep. 13:1-15.)  The positions share similar duties, but supervisors receive higher pay. (Jordan Aff. ¶ 5; Lauriston Dep. 40:18-41:10.)

In May 2005, Sysco posted job openings for two lead drivers. (Gannon Aff. ¶ 16; Def.'s Ex. 17.)  Twenty-three drivers applied for the position, including plaintiff, who was the only minority

applicant.  (Gannon Aff. ¶¶ 17, 18; Def.'s Exs. 18, 19.)  Melendy encouraged him to apply and recommended him for the position. (Lauriston Dep. 59:2-7; Melendy Dep. 13:16-14:14, 36:16-19.)  In July 2005, after a competitive interview and evaluation process, Sysco promoted both Lauriston and another driver, James Marcondes, to the position of lead driver.  (Gannon Aff. ¶ 20; Gordon Aff. ¶ 4; Jordan Aff. ¶¶ 6-7.)  Marcondes, who is white, had been employed with Sysco since 1988.  (Gannon Aff. ¶¶ 19, 20; Gordon Aff. ¶ 4; Lauriston Dep. 51:5-54:24.)  Gordon and his superior, Director of Transportation Richard E. Jordan, Jr., made the promotion decisions with input from Sysco's Vice President of Operations, Patrick Stimpert.  (Jordan Aff. ¶¶ 6-7; Gordon Aff. ¶ 4.)

B.  **Plaintiff's Tenure as a Lead Driver**

Sysco evaluates lead drivers and supervisors on their ability to manage the drivers for whom they are responsible and the performance and productivity of those drivers.  (Gannon Aff. ¶ 43; Gordon Aff. ¶ 5.)  Plaintiff characterizes his performance as a lead driver as "very good."  (Lauriston Dep. 67:4-5.) Others familiar with his work, including Gordon, plaintiff's immediate superior, and Jordan deemed his performance unsatisfactory.  (Gordon Aff. ¶ 7; Jordan Aff. ¶¶ 9-10.) Melendy, who remained at Sysco until leaving under "strained" circumstances in April 2006, also identified problems with

-4-

plaintiff's work as a lead driver.  (Gannon Aff. ¶ 22; Melendy Dep. 15:14-16:17, 21:18-23:7, 38:9-42:8.)

In the eighteen months following his promotion, plaintiff received four formal written warnings with regard to several accidents involving drivers in his group and his failure to turn in performance and injury reports on his drivers in accordance with company policies.  (Def.'s Exs. 22, 33, 34, 36.)  On November 29, 2006, he was warned, "the next time Rob has any infractions he will [receive] disciplinary action up to and including termination."  (Def. Ex. 36.)  Three drivers under his supervision complained about him to management, and two requested transfers to another supervisor.  (Def.'s Exs. 27, 30, 31.)

Lauriston's personnel file documents numerous other incidents, many of which seemed minor, during his time as a lead driver.  (Def.'s Exs. 21, 23-26, 28, 29, 35.)  Plaintiff does not dispute that many of these incidents occurred, but denies that he was at fault.  Rather, he claims a systematic scheme by management to single him out for unfair disciplinary action, which escalated rapidly after Melendy's departure.  (Lauriston Aff. ¶¶ 12-21, 24-34.)  Plaintiff testified that one driver, Arthur Moller ("Moller"), was asked by Sysco to file a complaint against him and that Moller indicated that management was "out to get [Lauriston]" and that he should "watch his back."  (Lauriston

Dep. 68:7-70:3.)  Moller denies these statements.  (Moller Dep. 14:2-25:23.)

Defendant claims that plaintiff had problems with follow-up, communication with drivers, and understanding his managerial role properly, for which he received advice and coaching from Gordon, Jordan, and Melendy.  (Gannon Aff. ¶ 25; Jordan Aff. ¶¶ 9, 13; Gordon Aff. ¶ 7; Melendy Dep. 41:23-42:20, 52:3-53:7; Def.'s Ex. 39.)  Plaintiff maintains that he was trained inadequately for his new role and that management targeted him for minor infractions for which other (Caucasian) supervisors and lead drivers were not sanctioned.  (Lauriston Aff. ¶¶ 12, 13, 38, 39.)

## C.    **Plaintiff's Demotion and Termination**

The present litigation arises from three adverse actions that Sysco took relative to Lauriston.  First, in 2006, Sysco promoted Marcondes (the man who had been promoted with plaintiff) from lead driver to supervisor.  Marcondes had no written warnings or other negative incidents in his personnel file and a longer tenure with the company.  (Gannon Aff. ¶ 27; Jordan Aff. ¶ 11; Gordon Aff. ¶ 6; Melendy Dep. 21:18-22:22; Def.'s Ex. 37.) Plaintiff claims unlawful discrimination drove the decision to promote Marcondes over himself.

Sysco later requested that plaintiff return to his former position as a driver, where he had performed well.  (Lauriston Dep. 71:21-72:17.)  He did not agree voluntarily, and ultimately

-6-

was demoted at the end of 2006, a decision made by Stimpert, Jordan, Gordan, and Julia Gannon, Sysco's Vice President of Human Resources.  (Gannon Aff. ¶ 28; Jordan Aff. ¶ 15; Gordon Aff. ¶¶ 7-8; Def.'s Ex. 11.)  Plaintiff's pay was essentially the same as a result of this demotion.[1]  (Lauriston Dep. 78:18-79:6.)  Sysco demoted several Caucasian employees who failed to transition effectively to managerial positions.  (Gordon Aff. ¶ 14; Gannon Aff. ¶ Cavicchi Dep. 8:6-9:2; Lauriston Dep. 132:20-134:15.) Plaintiff concedes that two demoted supervisors had over ten years of experience.

Following his demotion, plaintiff made numerous complaints to other employees about his treatment.  (Gannon Aff. ¶ 30.)  In early 2007, he reported to Gordon that another driver, Jeffrey Corriveau, had complained to him about Marcondes.  According to plaintiff, Corriveau claimed that Marcondes had sexually harassed him on two separate occasions, including physically touching him on his buttocks.  (Gannon Aff. ¶ 31; Gordon Aff. ¶ 9; Lauriston Dep. 125:17-126:18.)  The accusation, which plaintiff did not report for two weeks after allegedly hearing it from Corriveau,

---

[1] The record contains no documents from plaintiff's personnel file documenting his rate of pay immediately before or after his demotion.  (Cf. Def.'s Ex. 12 (indicating a salary of $17.25/hour in May 2000, after Lauriston was initially promoted to driver).)  Plaintiff testified at his deposition that "when you are a lead driver, you get 1,050.  When you are a driver, I believe you get $200 every run . . . . So it depends on how you work that week."  (Lauriston Dep. 78:22-79:2.)

prompted an investigation by Gannon.  (Gannon Aff. ¶ 32; Gordon Aff ¶ 10; Lauriston Dep. 126:12-18; Def.'s Ex. 38.)

Gannon interviewed both Lauriston and Corriveau.  During his conversation with Gannon, Corriveau denied ever having made any accusation.  He explained that plaintiff had been complaining about Marcondes' promotion and his own demotion, and that Corriveau "tried to make light of the situation and that [Marcondes] was gay."  (Def.'s Ex. 38; see also Gannon Aff. ¶ 33.)  After reporting the accusation, plaintiff claims that Corriveau told him that he had been "just joking," but did not report that fact to management.  (Lauriston Dep. 136:18-138:10.) Gannon called a meeting on January 15, 2007, attended by both plaintiff and Corriveau, at which plaintiff repeated the alleged accusation and Corriveau again denied making it.  (Gannon Aff. ¶¶ 35, 36.)  Gannon concluded that Corriveau was the more credible party and that he had not made the accusation.  (Id. ¶ 37.) After asking Corriveau to leave the room, she terminated plaintiff's employment on the basis of his poor performance as a lead driver, his complaints about the company's treatment of him, and her belief that he had lied about Corriveau's accusation. (Id. ¶ 38; Def.'s Ex. 41.)

On March 14, 2007, plaintiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD"), which was cross-filed with the Equal

Employment Opportunity Commission ("EEOC").  (Def.'s Ex. 46.)
His charge included claims with regard to his being passed over
for promotion to supervisor in April 2006 and his demotion in
December 2006.  It did not refer to his termination in January
2007.  The MCAD entered a lack of probable cause determination on
plaintiff's claims, which was upheld by the agency on appeal on
September 26, 2008.  (Def.'s Exs. 48, 49.)  Plaintiff filed the
present suit on November 2, 2008.

### III.  LEGAL STANDARD

"Summary judgment is appropriate when 'the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law.'"  Barbour v.
Dynamics Research Corp., 63 F.3d 32, 36-37 (1st Cir. 1995)
(quoting Fed. R. Civ. P. 56(c)).  To succeed on a motion for
summary judgment, "the moving party must show that there is an
absence of evidence to support the nonmoving party's position."
Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990); see also
Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has made such a showing, "the burden
shifts to the non-moving party, who 'may not rest on mere
allegations or denials of his pleading, but must set forth
specific facts showing there is a genuine issue for trial.'"

Barbour, 63 F.3d at 37 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  The non-moving party must establish that there is "sufficient evidence favoring [its position] for a jury to return a verdict [in its favor].  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted).  The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  Barbour, 63 F.3d at 36 (citation omitted).

## IV. DISCUSSION

Where a Title VII plaintiff lacks "smoking gun" evidence of an employer's discriminatory intent, he may prove his case by way of the three step analytical framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  See Wheelock Coll. v. Mass. Comm'n Against Discrim., 371 Mass. 130, 138, 355 N.E.2d 309, 314 (1976) (adopting the McDonnell Douglas framework for Chapter 151B claims).  Under this test, plaintiff must first establish a prima facie case for discrimination.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999).  The burden then shifts to the defendant to articulate a nondiscriminatory reason for the challenged conduct.  McDonnell Douglas, 411 U.S. at 802-03.  Sysco "need not demonstrate that

its actions were in fact motivated by a nondiscriminatory reason, but instead must show only that a legitimate reason existed. '[Its] burden is one of production, not persuasion.  It must only articulate a valid reason.'"  <u>Morgan v. Mass. Gen. Hosp.</u>, 901 F.2d 186, 189 (1st Cir. 1990) (quoting <u>Oliver v. Digital Equip. Corp.</u>, 846 F.2d 103, 108 (1st Cir. 1988)).

At the third stage, plaintiff must prove that Sysco's nondiscriminatory reasons were mere pretext for an unlawful motive.  <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 147-48 (2000); <u>Abramian v. President & Fellows of Harvard Coll.</u>, 432 Mass. 107, 118, 731 N.E.2d 1075, 1085 (2000).  He must produce "credible" evidence and specific facts that would allow a jury to find that Sysco's stated reasons masked its true, discriminatory motive.  <u>Sullivan v. Liberty Mut. Ins. Co.</u>, 444 Mass. 34, 54-55, 825 N.E.2d 522, 540-41 (2005).

## A.   **Failure to Promote Claim**

Defendant argues that plaintiff's failure to promote claim is barred by the statute of limitations.  Plaintiff argues in his brief that a factual dispute exists as to when he learned of his non-promotion and triggered the statute, but did not press this point at oral argument.

A charge of discrimination must be filed with a state or local agency "within three hundred days after the alleged unlawful practice occurred . . . ."  42 U.S.C. § 2000e-5(e)(1);

<u>see also</u> Mass. Gen. Law ch. 151B, § 5 (establishing a similar 300
day limitations period); <u>Nat'l R.R. Passenger Corp. v. Morgan</u>,
536 U.S. 101, 113-14 (2002) (holding that discriminatory acts
such as termination, failure to promote, and denial of transfer
are discrete acts that must be brought within the limitations
period).  As plaintiff acknowledged in his deposition and
conceded at oral argument, he was aware that he had been passed
over when Marcondes was promoted in April 2006, more than 300
days before filing his charge of discrimination.  (Lauriston Dep.
88:11-22, 91:17-20.)  Therefore, his claim is barred.

**B.    <u>Demotion Claim</u>**

With respect to his demotion claim, the parties agree that
plaintiff has shown a prima facie case under the first step of
the <u>McDonnell Douglas</u> analysis and that Sysco has met its burden
of articulating a nondiscriminatory reason for its action under
the second step.  (Def.'s Br. 18; Pl.'s Opp. 14.)  Therefore, the
Court restricts its inquiry to the third stage of the test,
evaluating whether plaintiff has produced credible evidence that
Sysco's stated reason for the demotion -- his poor performance as
a lead driver -- was mere pretext for unlawful discrimination.

Plaintiff offers comparative evidence of Sysco's disparate
treatment of similarly situated employees outside his protected
class.  He bears the initial burden of demonstrating that such
parties were similar to him in all relevant respects.  <u>Perkins v.</u>

-12-

Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996)
(affirming summary judgment for defendant where plaintiff could
not show that comparators engaged in "same conduct without such
differentiating or mitigating circumstances that would
distinguish their conduct or [their] employer's treatment of them
for it" (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th
Cir. 1992))).  "Exact correlation is neither likely nor
necessary, but the cases must be fair congeners.  In other words,
apples should be compared to apples."  Dartmouth Review v.
Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989).

    Plaintiff identifies Gary Nunes, a Caucasian supervisor, as
his main point of comparison.  Nunes, who has worked for Sysco
since 1989, was promoted to lead driver in 1999, and to
supervisor in 2001.  He received Sysco's Employee of the Year
award in 2003 and an additional award in 2006, and has served as
both the Vice Chair of Sysco's Transportation Safety Committee
and a member of its Ethics Compliance Board.  Nunes' personnel
file contains a letter written by Jim Michaud, one of his
drivers, commending his professionalism, communications skills,
leadership ability, and respectful attitude.  However, Nunes'
file also contains an October 5, 2004, letter of concern
regarding his tardiness.  On February 25, 2005, he received a
formal written warning after refusing to assist other drivers and
supervisors during a snowstorm, for which he was suspended for

three days and placed on ninety days probation.  On March 10,
2006, Nunes was involved in a vehicle accident while driving a
shift, and received a second written warning as well as mandatory
driver re-training.  These incidents notwithstanding, Nunes was
not demoted.  Plaintiff argues that, while he received reprimands
and eventual demotion for trivial infractions, Nunes was not
punished for his own violations, instead receiving awards.

     The Court agrees with plaintiff that, given their similar
duties, it is reasonable to compare a supervisor and a lead
driver.  However, no rational fact finder could interpret Sysco's
disparate treatment of the two men as evidence of discrimination.
Following years with an untarnished record as a lead driver and
supervisor, Nunes had three isolated incidents for which he did
receive punishment, including a suspension.  Plaintiff, by
contrast, accrued four formal warnings within a twelve month
window, including serious infractions for failing to report
injuries among his drivers to the Safety Department on multiple
occasions.  His personnel file documents numerous lesser
incidents.  Most importantly, written and testimonial evidence by
supervisors, subordinates, and colleagues, including his former
patron, Melendy, indicate that Lauriston was ineffective at the
key responsibilities by which Sysco judges supervisors and lead
drivers.  Based on the undisputed facts about the two men's
disciplinary and employment records, they were not similarly

-14-

situated.  See Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23,
31-32 (1st Cir. 2008) (concluding that a plaintiff and her
proffered comparator were not similarly situated because the
plaintiff had received "a far more negative . . . year-end
assessment" and had a history of work-related problems and
warnings); Perkins, 78 F.3d at 751 (holding that comparator was
not similarly situated where the employer "had good reason to
believe that [his] misconduct, while reprehensible, was markedly
less serious than the appellant's misconduct. . . . [and he] --
unlike the appellant -- did not have a history of repeated
disciplinary actions over a ten-year period."); cf. Vélez v.
Thermo King de Puerto Rico, Inc., 585 F.3d 441, 451-52 (1st Cir.
2009) (reversing summary judgment for employer and holding that
plaintiff, fired for stealing and selling company hardware, was
similarly situated to other employees who admitted stealing
equipment for mere personal use but were not fired).

     Plaintiff offers Marcondes as another comparator, although
chiefly with regard to the failure to promote claim.  However,
plaintiff does not dispute Marcondes' untarnished record as a
lead driver.  His suggestions, devoid of factual reference, that
"Marcondes was evidently friendly with Jordan" or that he
"believes that the drivers under Marcondes' supervision . . .
also may have had accidents whereby Marcondes was not
disciplined" are insufficient to demonstrate that Marcondes was

similarly situated.  (Pl.'s Opp. at 13.)

Plaintiff argues that he was not at fault with regard to a few of his disciplinary infractions, but offers no evidence corroborating his belief "that Defendant began a systematic effort to accuse [him] of poor performance and/or disciplinary issues in order to create an administrative record of offenses." (Id. at 6-7.)  Even Melendy, at whose insistence plaintiff maintains he was promoted, stated that plaintiff performed poorly in a supervisory role, and he does not deny that both Melendy and Sysco management attempted to counsel him.  Likewise, despite his claim that Sysco has since demoted two other Caucasian employees "perhaps to justify the Plaintiff's demotion" or "to bolster its position that demoted [sic] a Supervisor was not an unheard of event," plaintiff has shown no facts corroborating his assertion of the pretextual nature of those actions.  (Id. at 7.)

C.   **Termination Claim**

1.   **Jurisdiction**

Defendant argues that the Court lacks jurisdiction over the termination claim because plaintiff did not exhaust his administrative remedies.  Plaintiff argues in response that, while he did not include a termination claim in his pro se administrative pleading, it was closely related in time and substance with his other claims and was discussed by the MCAD in its findings.

Before filing a complaint in court for discrimination based upon race, color, or national origin, a plaintiff must first present his claims to state and federal agencies responsible for such issues.  42 U.S.C. § 2000e-5(e); Mass. Gen. Laws ch. 151B, § 5.  Without the requisite filing, a court lacks jurisdiction over the claims.  Fantini v. Salem State Coll., 557 F.3d 22, 26-27 (1st Cir. 2009); Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 531 n.11, 750 N.E.2d 928, 936 n.11 (2001).

This general rule "does not mean that the administrative complaint sets a rigid 'blueprint' for the civil action." Everett v. The 357 Corp., 453 Mass. 585, 602-03, 904 N.E.2d 733, 748 (2009) (citing Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990)).  Rather, "'a claim that is not explicitly stated in the administrative complaint may be asserted in the subsequent . . . action so long as it is based on the acts of discrimination that the [administrative] investigation could reasonably be expected to uncover.'"  Id. (quoting Windross v. Vill. Auto. Group, Inc., 71 Mass. App. Ct. 861, 864-65, 887 N.E.2d 303, 307 (2008)); see also Powers, 915 F.2d at 39 ("[T]he critical question is whether the claims set forth in the civil complaint come within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" (quoting Sanchez v. Std. Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970))).  Here, plaintiff's termination claim

not only fell within that range, the MCAD mentioned it expressly.
(Def.'s Ex. 48 at 2.)  <u>Cf.</u> <u>Everett</u>, 453 Mass. at 605, 904 N.E.2d
at 750 (ruling that an employee could not amend his civil
complaint to include additional discrimination claims of which
the employer had no prior knowledge and which occurred several
years after those raised in his administrative complaint).  Thus,
the claim is properly before the Court.

    **2.   <u>Merits</u>**

    As with the demotion claim, the parties agree that the first
two stages of the <u>McDonnell Douglas</u> test are met.  As grounds for
plaintiff's termination, Gannon cited his "record of poor
performance as a supervisor, his complaints about the company's
treatment of him,[2] and my belief that he had not told the truth
about Mr. Corriveau's statement . . . ."  (Gannon Aff. ¶ 38.)
Plaintiff must demonstrate a triable issue of fact as to the
pretextual nature of these explanations and the actual,
discriminatory motive underlying his termination.

    Plaintiff does not dispute that he complained to other
employees about his treatment by Sysco's management following his
demotion or that he had a series of performance and disciplinary
problems as a supervisor.  There is a genuine issue of fact as to

_____

    [2] Although the Complaint refers to retaliation as well as
discrimination by Sysco, plaintiff has not briefed or raised a
retaliation claim at any stage of these proceedings.  (Compl. ¶¶
27, 34.)  Thus, the Court deems any such claim waived and does
not address it here.

whether Corriveau actually made the accusation of sexual harassment.  The issue, though, is whether Sysco's reason for terminating him was mere pretext for discriminatory animus.  Even if Gannon should have believed Lauriston, plaintiff has presented no facts suggesting that she fired him for discriminatory reasons.  The First Circuit has stated explicitly that "[e]vidence contesting the factual underpinnings of the reason for the [employment decision] proffered by the employer is insufficient, without more, to present a jury question." <u>Morgan</u>, 901 F.2d at 191.  Moreover, Lauriston failed to tell the company that Corriveau said he made the comment in jest.  While plaintiff may not have believed Corriveau when he said the comment was a joke, his failure to report that statement undercut his credibility severely.

At oral argument, plaintiff offered Corriveau as a comparator to support his termination claim, noting specifically that Corriveau, a Caucasian employee, was not punished for admittedly calling his supervisor "gay", while Lauriston was fired for what Gannon believed to be a false report of sexual harassment.  Such a comparison is meritless.  Falsely reporting an accusation of sexual harassment is a significantly more serious infraction than Corriveau's comment.

**ORDER**

Defendant's Motion for Summary Judgment [Docket No. 16] is **<u>ALLOWED</u>**.

_/s/ Patti B. Saris_

PATTI B. SARIS
United States District Judge